Good morning, Your Honors. Barry Ponticello on behalf of Appellant National Steel and Shipbuilding Company. I'd like to reserve four minutes for rebuttal. Please watch the clock. Thank you. Today our request will be two-fold, that the matter be remanded back to the trial level and so that the application of the Supreme Court requirements of Hensley v. Eckhart as to degree of success and proportionality be addressed by the court, which was not previously done. I will focus my argument on three areas. One will be the legal error committed by the BRB and the trial court. Secondly, the policy and fee-shifting statute cases and what that requires and what the effect would be. And third, our situation is not discreet. It is symbolic of much of the fee litigation that exists under the Longshore Act, under Section 928, where there is an inconsistent application of Hensley and other standards. And this case provides a clear platform to give the community bright-line guidelines about how the trial courts should address those issues. So I'd first like to start with the legal error. Attorney fees under the Longshore Act occur under Section 928A and B. A involves a situation where no benefits were provided, no compensation, and through the services of an attorney, compensation is awarded. This is in the successful prosecution of his claim. And so is a settlement a successful prosecution of the claim? Under 928B, it would be. I'm looking at 928A. Shall thereafter have utilized the service of an attorney-at-law in the successful prosecution of his claim? Not as to the 2013 claim, no. The 2013 claim was controverted. No compensation was paid. It proceeded to trial. It proceeded to a defense decision. No benefits were awarded. It was upheld on appeal. And under 928A, there has been no successful prosecution. Go ahead. But didn't the global settlement, the $50,000 settlement, said it would extinguish all claims? Didn't it cover both the 2013 injury and the 2009? That settlement extinguished the appellate rights of the claimant under the 2013 cumulative trauma claim. So the settlement did cover the 2013? Only to the extent it closed out further appellate rights. Yeah, but that has some value. I mean, you may have lost an appeal. It has some value, I would agree. That goes to the degree of success and proportionality. And how would you split, since it was a $50,000 global settlement, said you're extinguishing all claims, resolving everything, how would a, you know, if we remanded, how would the district court proportion? I think it's very straightforward. The court should segregate the 928 activities related to the 2013 claim from the activities related to the 2009 settlement, which left medical open. How can the court do that when all that's at issue is the knee? It's the same doctors. It's the same MRIs. It's the same examination stuff. He came in complaining that he had damaged his elbow on July 18th, 2013. This would be completely different. But we're talking about the same injuries that were at issue in the 2011. How do we possibly distinguish those? I understand that he had two theories and why he had two theories. But they're two theories of the same injury. It's the same operative facts. Sure. I, I, the question is how would you segregate them, right? Is that what the court's asking? Oh, well, I'm trying to figure out what, what, what the difference is. What would the difference in proof have been between a 928A and a 928B? Well, as we noted in our brief, the, the matter proceeded to trial solely on a 928A issue. Before the trial, it was read into the evidence that all medical was being provided. The parties went to an agreed medical examiner. There was no issue as to the 2009 claim. The only issue was claimant was seeking a new claim so that he could obtain compensation because compensation was previously settled. So that is the difference. We, we proceeded to a trial and if the record, the issue we had is that the, the judge who decided the fees was not our trial judge. Judge G who issued the, the lengthy trial decision retired and when the matter was remanded, a different judge addressed the fees and they adopted what the BRB said about success and the BRB indicated there was success on remand, remanding the 2009 case. That wasn't subject of the trial. So, Your Honor, we didn't try the 2009 case at all. But it's the same, it's the, it's an injury to the same body part. It's the same doctors. I don't understand what the difference is between the two claims as a factual matter. Well, okay, as to a factual matter, one occurred in 2009. The other is that there has been gradual cumulative trauma injury occurring through 2013. That's the factual difference. That was what was litigated through the doctors, through the testimony of the witnesses. Whether in fact there was another period of injurious exposure which would have had a different average weekly wage, would have led to different compensation. There's a whole host of different things, which is why it was pursued. We had the 2009 claim that was resolved. Compensation was resolved. Claimant would have to modify that claim to get any compensation. So what they did was they tried for a higher compensation rate by trying the 2013 claim. And the BRB concluded that these were two, two theories but related to the same thing. They were alternate theories. Well, they were not, as we noted, at trial, those theories were not both postulated. Is that a finding by the BRB? Is that subject to a clear error standard? Is that an error of law? I believe that would be the substantial evidence standard. That's a factual error they made because the record itself does not demonstrate that the issue of 2009 was at the trial at all. All right, but they remanded on the 2009 question. Absolutely. So to get to the question about the settlement of $50,000, that's a cost of defense settlement because claimant himself has alleged that he would be entitled to a year, potentially two years of temporary disability, increased permanent disability. We estimated that as conservatively $230,000. So when NASCO was faced with a remand, the allegation was on remand, if this 2009 is successful, you'll have to pay $230,000 or more. So to settle that for $50,000 goes to the degree of success and proportionality because it's a cost of defense. There was never an award on modification, which is important to note. Could I ask a question just about the applicability of 928B? It says that you get attorney's fees if the compensation thereafter awarded is greater than the amount paid or tendered by the employer. How does that apply? Because if there's no amount awarded, it was a settlement. What was the amount paid or tendered by the employer?  But what was the compensation that was awarded? $50,000. So you're saying that the compensation thereafter awarded was not greater than the amount paid or tendered by the employer. It was the same amount. So that would make 928B not applicable. No, no, no. The exact opposite. 928B deals with situations where compensation has been paid and the fee shall be solely based on the difference between what is offered and what is obtained. We're in the 928B box, Your Honor. So how does that apply to the settlement here? Here's how it applies. So on remand, Klayman is alleging that they're entitled to additional compensation. That issue never became litigated. It was remanded back. It never went to trial. So Klayman was alleging that he was entitled to reopen that case for additional compensation. The parties agreed to resolve that. And that is exactly what's in keeping with Hensley is that... Can you relate it to the language of 928B, please, and just show me how the statute applies? The statute says where compensation is paid, a fee shall be solely related to the difference in what was awarded as opposed to what was tendered or paid. NASCO didn't tender or pay anything while the matter was on remand. The matter was on remand to be set for hearing and the parties reached a moderate settlement. So that construct is 928B. The 2009 claim was already subject to a compensation order for which medical was left open. So any fees related to that case are 928B fees. The case that went to trial was the cumulative trauma that was completely controverted of 2013. That's the 928A situation. And the error that was made is that the BRB talked about success and molded both of those together when they were clearly to be segregated. That is the error that was made. Secondly, the error was made under Hensley. They didn't apply the two-step process, which is what is the degree... related to the degree of success. What is the success that claimant had here? The success was the BRB remanded it back and he achieved a $50,000 settlement. Did he make a dollar claim for his 2013? When he came in and said, I've got a 2013 claim, did he make a dollar claim? The $230,000 is your estimate of what it might cost you. Well, no, it's my estimate based upon the demands that were made that we should pick up temporary disability and pay additional compensation. That was the demand made by claimant. Whether there was a dollar demand, Mr. Winter and I have had many cases together, I imagine there was, but I can't speak accurately to that. There's nothing, he wasn't required to file any form or present anything to the ALJ that would say we're seeking $450,000. No, but he would be required for modification to say what benefits are sought, which are I'm seeking additional compensation of temporary disability, permanent impairment. And that was the gravamen of the modification. But that, I'm running short on time here, but I... The error is melding A and B. I can't be more strenuous on that because A only applies to controverted cases where no benefits are paid. That's what we have and went to trial under the 2013 case. The 2009 case was not the subject of trial. It just wasn't. We read into the judge's stipulation into our briefing. So that was a complete success for the employer, was a defense finding. In BRB practice, if you settle a case very quickly before an ALJ, do you ordinarily get, does the other side ordinarily get attorney's fees? That's exactly why I'm saying we need a bright line. Sometimes yes, sometimes no. The application of Hensley is inconsistent and sporadic. Yeah, it's not really Hensley that's the problem. I think as Judge Akuta has been pointing out, it's a 928B problem. Well, the B problem is, I think is very straightforward here, is what the level of success, what was the success that was obtained? It was remand. The success was getting the case remanded, but not the 2013 one. It was getting the 2009 remanded. And then what was the success? Reaching a settlement. And the fee should be commensurate with the proportionality under Hensley. Yeah. The complication, at least for me, counsel, is that the BRB was persuaded that there likely was something here that related to 2009. And it was all supported by all of the evidence that they had amassed for the 2013 claim, which the BRB found was not successful, or affirmed as not being successful. So the problem is, is again, we're not talking about knees and elbows. We're just talking about knees. And that's all we're talking about. I understand that. But what the BRB indicated was there is something as to 2009. I don't disagree with you. They remanded that back. And as to 2009, what was the success that was garnered? That's how we address the fees under 928B. You want to take the rest of your time? Oh, sorry. One clarifying question. Sure. Just going back to 928B, when it refers to greater than the amount paid or tendered by the employer. So you're saying that the amount paid or tendered would not be the amount that was paid back in, what was it, 2011? That's not what we consider there? No, because we already settled that case. Fees were already resolved on that case. It doesn't matter, because I know that's modifying what was done in 2011. So we keep that, in your view, we keep it separate? Because that was already resolved, even though this is modifying that award? Well, it's modifying it. So if there's any additional benefits or additional compensation garnered, a fee would be related to the additional compensation garnered. The 2011 compensation order resolved those issues. It resolved medical open, which I didn't get a chance to talk to you about, that medical had all along been left open. That was not procured through any litigation. So I'd still like to reserve some time for rebuttal. You only have 30 seconds, but we'll give you a minute. Okay. Thank you. Good morning, Your Honor. I think from the discussion to this point, I think it's clear why the BRB and the ALJ did not separate out these two claims. If I may, just to give a little bit of background, one, the petition for fees was under 28B, as presented to the ALJ. We can get to some of that discussion in just a moment, but I want to give a little bit of history. First, the claim, a claim for compensation on behalf of Mr. Rodriguez was filed on June 4th, 2014 for the 2009 injury for bilateral knees. That's how the claims began. Both claims, 2009 and 2013, were addressed by Judge ALJG. The same issues applied to both injuries except for the AWW. Because Mr. Rodriguez had continued to work, and it was now four years later, with inflation taken into account, his earnings would have been greater in 2013. But as far as the medical care and the compensation that might be due, they would stem out the same. I think it might be noted, if you look through the record, you'll see that there were additional benefits paid to Mr. Rodriguez after the filing of the 2014 claim, both for temporary disability and over $9,000 in 2015 for permanent disability. If you listen to what was said by counsel for NASCO, he said that there was no issue regarding the 2009 claim. So, representing the Judge, there's no issue. We've done everything. There's nothing at issue here. It's only the 2013. That wasn't true. In response to the $50,000, prior to the $50,000 being offered, we'd already had a trial, we'd already had an appeal, and it was already back. Counsel, that's correct. Why didn't the ALJ comment on the 2009 injury when she dismissed the 2013 claim? Under the ALJ's decision, you were taking nothing. That's correct. And that's because in the 2009, she was in error. In other words, she said there was no ability to modify section, the 2009 injury. That's what the BRB then decided, is that, yes, there was a modification claim, and she should have addressed that. And so it was referred back down. She obviously didn't think she was deciding a modification claim, did she? That's a very, very long, very comprehensive opinion, and yet she missed something so obvious that she didn't realize that this was related to the 2009 claim? I don't know what she didn't realize. I can tell you that in the last six months of her on the bench, there were three cases that I had with her. Two of them were remanded, and they were overturned entirely. This one in part. So I don't know, Your Honor, to answer that question whether she may have missed or not missed. It's a 40-page, single-spaced opinion. It's pretty well written. Pass this off. That was a short decision from Judge G, Your Honor. So I can't answer that and what she may have been thinking or not thinking. I just know that we addressed that before the board, and that's why it was remanded. But in reference to the, if I may just quote in the petition, it states, while pending on remand before the OLJ, the parties negotiated a lump sum settlement of $50,000 to resolve respondent or claimant's entitlement to compensation, disability, and appellate rights as to the admitted bilateral knee injury of August 7, 2009, and as to the disputed left knee injury of July 18, 2013. So the $50,000 applied to all claims from both injuries, both the 2009 and 2013, except for medical care, which remained open. And in your view, how should we apportion that? Since the global settlement says it's referring to both. I don't think you can. I haven't made those, I haven't even attempted to make those calculations other than to notice we had doctors that differed between whether there was a new injury or not, so that's why we, and whether there was surgery needed or not. And then just before trial in 2018, the parties agreed to use Dr. Tal David as an agreed medical examiner to make, to decide, instead of leaving that to the court maybe a year later, to decide whether surgery was needed. That doctor did decide that surgery was needed. It didn't really matter which, whether it was a 2009 or 2013 injury, because both claims are for bilateral knees, period. So for the attorney's fees then, which section of 928 applies and how? If I may start with which one doesn't apply, one that's 28C, claim it would not be responsible for my fees. I think that there was a successful prosecution of the claim in regard to obtaining the medical care, whether we include the over $9,000 in PD that was paid, because at the time of trial there was no further issue, and then the additional $50,000 that was paid, and NASCO being responsible for either 28A or 28B. The language of 928A arguably applies to the, I guess it's the 2009 injury claim, because there was some payment made, or at least that's the argument. And then I don't see how the 28B applies to the 2013 claim. Maybe you can explain what your view is. I can. Under Section 28A, which I don't believe is applicable, because I petitioned under 28B, we filed a claim in June of 2014. Bless you. Thank you. National Steel and Shipbuilding Company was paying benefits during that time for the 2009 injury, temporary disability. So they would have paid benefits within that 30-day period, as is noted by this court in the Bell case and the Dyer case, Dyer v. Senex Harvest. 28A would apply, and the 30-day period is all that we look at. So benefits were obtained after NASCO stopped paying benefits in 2015, the additional $50,000. And so that would fall under 28B. There was no offer, and in fact if you go back to the record, which I probably, I believe you already have, there was no offer made at any time until the $50,000. So there wasn't any way of saying, oh well, it, you know, what's above or below was claiming it successful in getting something more than an offer. There was no offer until we resolved the case. And that would be an aimless offer. In other words, did they actually then put in writing an offer prior to the $50,000, and we went through trial and everything else, we didn't get anything more than that? That's not the case here. Roberts. Counsel, is, do you agree that 928B is the operative section here? I do, Your Honor. Okay, why did the BRB then on page 5 of its decision refer to 928A? I don't know. And I don't see a reference to 928B. I think that's harmless error. It's just, was there a successful prosecution? Was there something that adversely affected the party here, and that changed the position of NASCO to offer money? Yes, there was a trial. Yes, there was an appeal. And that adversely affected their position in this case to offer additional money. I don't have anything further unless there are any additional questions. Apparently not. Thank you. Thank you. My colleague agrees with me that 928B is the operative section. I think we're on the same page. As to segregating, Judge Gee in her 40-page decision segregated the 2013 claim from a 2009 claim. She addressed it. It's possible to do. Even if we, I think my position is clear on that, but even if we accept that we should somehow intermingle A and B, which I think creates cacophony, but even if we do that, you still have to address level of success. What was claimant successful on? They went to a trial after years of litigation and got a defense finding. They appealed it. It was affirmed on appeal. All that was successful was the remand and then the settlement. The medical issue, medical was not obtained through litigation. It was opened through the 2009 claim. So the BRB was in error in saying medical. As Judge points out, the BRB was in error in utilizing 928A. They took these standards together and it is very easy to remand the matter to the trial court and have them segregate the A from B claims and to then apply the degree of success and proportionality because Hensley tells us it's not just the hours worked, but the outcome that must be proportional. Okay. You're over time. I think we have your argument. Thank you, Your Honor. Appreciate it. The case of NASCO, the Division of Workers Compensation Programs, et al. is submitted.
judges: BYBEE, IKUTA, LEE